UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NYRAN D. THOMPSON, A# 037-461-359,

Petitioner,                    DECISION AND ORDER

-vs-
                                                        16-CV-6608 (CJS)
LORETTA E. LYNCH, Attorney General of the
United States of America, et al.,

Respondents.
_____

INTRODUCTION

In this *pro se* petition filed pursuant to 28 U.S.C. § 2241, Nyran D. Thompson
("Thompson" or "Petitioner") argues, *inter alia*, that his continued detention in Respondents'
custody is unlawful, based on the Supreme Court's decision in *Zadvydas v. I.N .S.*, 533
U.S. 678, 121 S.Ct. 2491 (2001).  Thompson's application for a writ of habeas corpus is
denied.

BACKGROUND

Thompson, born in 1976, is a native and citizen of Jamaica, who has resided in the
United States since 1981.  After being convicted of various controlled substance offenses,
the Department of Homeland Security ("DHS") ordered that Thompson be removed from
the United States.   Thompson is currently appealing his final order of removal to the U.S.
Court of Appeals for the Second Circuit.  The Second Circuit has stayed Thompson's
removal pending the outcome of his appeal; otherwise, there is no apparent impediment
to his removal to Jamaica.  While awaiting the outcome of his appeal, Thompson remains
in DHS custody at the Federal Detention Facility in Batavia, New York.

More specifically, the facts underlying Thompson's continued detention are set forth
in an affidavit from DHS Deportation Officer Juanita Payan ("Payan"), as follows, in

pertinent part:

> Thompson is a native and citizen of Jamaica, who was admitted to the United States at New York, New York, on about October 16, 1981, as a lawful permanent resident.

> Thompson has been convicted of criminal offenses in the United States as follows:

>> a. On or about July 11, 1997, Thompson was convicted in the Binghamton, New York City Court, of Criminal Trespass in the 2nd Degree in violation of New York State Penal Law Section 140.15. For this offense, he was granted a conditional discharge.

>> b. On or about May 4, 2001, Thompson was convicted in the Chemung County Court, State of New York, of Resisting Arrest in violation of New York State Penal Law Section 205.30, and Reckless Driving, in violation of New York State Vehicle and Traffic Law Section 1212. For this offenses, he was sentenced to a term of incarceration of one (1) year.

>> c. On or about July 17, 2001, Thompson was convicted in the Elmira, New York City Court, of Resisting Arrest in violation of New York State Penal Law Section 205.30. For this offense, he was sentenced to a 60 day term of incarceration.

>> d. On or about December 4, 2007, Thompson was convicted in the Broome County Court, State of New York, of Criminal Possession of a Weapon in the 2nd Degree, to wit: a firearm in violation of New York State Penal Law Section 265.03(3). For this offense, he was sentenced to a 42 month term of incarceration.

> On May 1, 2007, Thompson was encountered by officers of the DHS Criminal Alien Program while he was incarcerated at the Monroe County Jail, Rochester, New York.

> On May 24, 2010, Thompson filed with U.S. Citizenship and Immigration Services ("USCIS"), an Application for Certificate of Citizenship (Form N-600). Exhibit A, p. 3. On June 26, 2015, USCIS denied Thompson's N-600

application.

Thompson was placed in immigration removal proceedings by a Notice to Appear, dated June 11, 2010, which charged him pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(C), 8 U.S.C. § 1227(a)(2)(C), with being subject to removal from the United States as an alien who has been convicted of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, in violation of any law, any weapon, part, or accessory which is a firearm or destructive device.

On June 15, 2010, Thompson was received into DHS custody upon completion of his sentence with the New York State Department of Corrections and Community Supervision.

On October 20, 2010, an immigration judge ("IJ") granted Thompson cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a), and terminated the immigration proceedings.  Thompson was subsequently released from DHS custody.

[Subsequently,] Thompson [was] convicted of additional criminal offenses in the United States as follows:

> a. On or about April 26, 2013, Thompson was convicted in the Binghamton,New York City Court, of Resisting Arrest in violation of New York State Penal Law Section 205.30. For this offense, he was sentenced to a one (1) year term of incarceration.

> b. On or about May 7, 2014, Thompson was convicted in the Court of Common Pleas of Monroe County, Pennsylvania, of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver Cocaine in violation of Title 35, Section 780-113(A30) of the Pennsylvania Criminal Code. For this offense, he was sentenced to a minimum of 11 months, 15 days, up to a maximum of one (1) year, 11 months incarceration.

On April 21, 2015, Thompson was encountered by officers of the DHS

Criminal Alien Program while he was incarcerated at the Monroe County Jail, Rochester, New York. Thompson was taken into DHS custody and served with a NTA which charged him, pursuant to INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), with being subject to removal from the United States as an alien who has been convicted of a controlled substance offense and pursuant to INA § 237(a)(2)(B)(iii), 8 U.S.C. 1227(a)(2)(B)(iii), as an alien who has been convicted of an aggravated felony as defined in INA § 101(a)(43)(B), 8 U.S.C. § 1101(a)(43)(B), an offense relating to the illicit trafficking in a controlled substance.

On October 13, 2015, an IJ ordered Thompson removed from the United States to Jamaica.  Thompson appealed the IJ's decision to the Board of Immigration Appeals.

On December 30, 2015, an IJ conducted a bond hearing in Thompson's case pursuant to *United States v. Lora*, 804 F.3d 601 (2d Cir. 2015).  On February 16, 2016, the IJ denied Thompson's request to be released on bond.  Thompson appealed the IJ's decision to the BIA.

On February 10, 2016, the BIA dismissed Thompson's appeal of the IJ's order of removal.

On February 19, 2016, DHS sent a presentation packet to the Embassy of Jamaica ("Embassy") in Washington, D.C., requesting that a travel document be issued for Thompson's removal.

According to DHS case notes pertaining to Thompson, on February 24, 2016, Thompson was interviewed by a representative of the Embassy.

On February 29, 2016, Thompson filed in the United States Court of Appeals for the Second Circuit a *pro se* petition for review of the BIA's order of February 10, 2016, along with a request for stay of removal.  Because Thompson filed a motion for stay of removal in his petition for review case, DHS was prevented from executing the immigration order of removal against Thompson due to a forbearance agreement between DHS and the Second Circuit Court.

***

In accordance with immigration regulations, DHS reviewed Thompson's custody status in May 2016. On or about May 9, 2016, Thompson was notified that DHS determined to continue his detention. DHS determined that based upon the totality of information available in Thompson's case that he would be a threat to the community if he were to be released from custody.

On May 11, 2016, the BIA dismissed Thompson's appeal of the IJ's order of February 16, 2016, which had denied Thompson's request for release on bond following a *Lora* hearing.

An additional review of Thompson's custody status was conducted by DHS Headquarters Removal and International Operations ("HQRIO") in August 2016. As part of that review, a panel was convened on August 8, 2016, at the Buffalo Federal Detention Facility in Batavia, New York, to conduct an in-person interview of Thompson.

Following completion of the file review and interview, Thompson was notified on or about August 24, 2016, that DHS determined to continue his detention in DHS custody.

On August 23, 2016, the Second Circuit Court granted Thompson's motion for stay of removal and his request for assignment of *pro bono* counsel.

Thompson's petition for review remains pending before the Second Circuit Court.

There is no institutional barrier to Thompson's removal to Jamaica; in recent years, DHS has successfully repatriated thousands aliens to Jamaica. For example, DHS reports show that in fiscal year ("FY") 2012, a total of 1,319 aliens were repatriated to Jamaica; in FY 2013, 1,108 aliens were repatriated to Jamaica; and in FY 2013, 1,027 aliens were repatriated to Jamaica.

At the present time, the only obstacle to Thompson's immediate removal to Jamaica in accordance with the order of removal is the pending stay order issued by the Second Circuit Court.

> Based upon the history of removals to Jamaica and the circumstances of Thompson's case, DHS has an expectation that Thompson will be removed from the United States once the Second Circuit proceedings are concluded. At present, there is an expectation that Thompson will be removed from the United States in the reasonably foreseeable future.

Declaration of Juanita Payan, Docket No. [#8-1] (citations and paragraph numbering omitted).

On August 30, 2016, Thompson filed the subject petition. (Docket No. [#1]). Liberally construing the petition, Thompson maintains that his continued detention is unlawful for the following reasons: 1) "his removal is not significantly likely to occur in the foreseeable future;"[1] and 2) he has been in custody longer than six months, and is neither a danger to society nor a flight risk.[2]  More specifically, Thompson alleges the following three claims: 1) his continued detention violates 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas*;  2) his continued detention violates the Fifth Amendment because it is not narrowly tailored to serve a compelling government interest; and 3) his continued detention violates the Fifth Amendment's Procedural Due Process Clause because he has been incarcerated more than six months without a meaningful review of his detention.

On October 28, 2016, Respondents filed a timely response to the Petition.[3] Respondents point out, initially, that to the extent that Thompson is attempting to challenge the underlying order of removal, his claim is barred by 8 U.S.C. § 1252.  The Court, though,

---

[1]Petition [#1] at pp. 5-6, 9-10, 14, 17.

[2]Petition [#1] at pp. 10-11, 15-16.

[3]On November 3, 2016, Thompson filed a motion for summary judgment, on the ground that Respondents had failed to file a timely response as ordered by the Court. See, Order [#3].  However, Thompson was mistaken on that point, as Respondents filed their response within forty-five days of the date the Order was served on them (September 13, 2016), as the Court directed. (Thompson erroneously calculated the response date from the date of entry, not date of service).  Accordingly, Thompson's summary judgment motion [#10] is denied.

does not interpret his petition as making such a claim.  Otherwise, Respondents generally indicate that Petitioner's detention is not indefinite, since the only reason he remains in custody is because he obtained a stay of his removal pending the outcome of his appeal to the Second Circuit; that his detention is therefore pursuant to INA § 236, and not INA § 241 as he supposes;[4] and that his procedural due process rights have not been violated, since DHS has conducted regular reviews of his continued detention.[5]

On November 10, 2016, Thompson filed a reply/traverse [#11], in which he reiterates his argument that his continued detention is unlawful, notwithstanding the stay of removal proceedings pending his appeal to the Second Circuit.[6]  Thompson also reiterates his claim that he poses no risk to the public if released, despite his significant criminal history.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir.2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration

---

[4]On this point, Respondents cite *Wang v. Ashcroft*, 320 F.3d 130, 147 (2d Cir. 2003) and *Garcia v. DHS*, 422 Fed.Appx. 7 (2d Cir. May 11, 2011).  Nevertheless, Respondents contend that Thompson's continued detention is appropriate under either § 236 or § 241.

[5]*See, e.g.*, Respondents' Answer and Return [#8] at ¶ ¶ 23-26, 19-21, 13-14.

[6]Thompson also devotes a significant amount of space to alleging that Respondents have attempted to mislead the Court, but the point on which he focuses (whether he signed a particular document) is irrelevant to the Court's determination, and Respondents have admitted that their responsive papers were mistaken about the subject point.

removal proceedings and pending removal following the entry of a final order of removal are governed by two separate provisions of the INA—respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order.   Because Thompson obtained a stay pending the Second Circuit's review of his final order of removal, the Court views him as being confined pursuant to INA § 236. *See, Morales v. Holder*, No. 13-CV-1089-JTC, 2014 WL 1117827, at *4 (W.D.N.Y. Mar. 19, 2014) ("[W]here a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision.").[7]  Nevertheless, Thompson's continued detention would be appropriate under either § 236 or § 241.

To begin with, INA § 236 provides, in pertinent parts, as follows:

(a) Arrest, detention, and release.

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... Except as provided in subsection(c) ... and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and
(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by the Attorney General; or
(B) conditional parole....

...

---

[7]As discussed by the Second Circuit in *Wang v. Ashcroft*, the determination of when an alien becomes subject to detention under INA § 241 rather than INA § 236 is governed by INA § 241(a)(1): Pursuant to § 241(a)(1)(B)(ii), "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien [pending review]," then the removal period begins on "the date of the court's final order." Accordingly, where a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision. *Wang*, 320 F.3d at 147.

(c) Detention of criminal aliens.

(1) Custody

The Attorney General shall take into custody any alien who—

...

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

...

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(a)(1)-(2) and (c)(1).   Thompson is subject to mandatory detention pursuant to 8 U.S.C 1226(c)(1), because he is deportable by reason of having committed offenses covered by 8 U.S.C. § § 1227(a)(2)(B).

On the other hand, INA § 241 provides authority to detain an alien once the decision on removability is made by the IJ, and the IJ's removal order becomes final.  In that regard, INA § 241(a) requires the Attorney General to accomplish removal within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General shall detain the alien."). The statute also authorizes the Attorney General to continue detention of certain criminal aliens—like

petitioner—who have been ordered removed due to conviction of an enumerated crime, or determined to be a threat to the community or risk of flight, beyond the expiration of the ninety-day removal period. *See*, INA § 241(a)(6).

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite post-removal order detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699–700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts ...." *Id*. at 701.

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id*.

By contrast, no such time limitation has been applied to the detention of criminal aliens under INA § 236(c), since the detention has "a definite termination point"—i.e., upon completion of the administrative removal proceedings and the issuance of a final order of removal. *Demore v. Kim*, 538 U.S. 510, 529, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (upholding constitutionality of mandatory detention of criminal aliens under INA § 236(c)).

In both *Demore* and *Zadvydas*, the Supreme Court discussed and distinguished the different purposes of pre- and post-removal order detention, emphasizing the material difference between the potentially indefinite post-removal period detention under INA § 241(a)(6), and the definite duration of pre-final order detention under INA § 236(c). *See Demore*, 538 U .S. at 526–529; *Zadvydas*, 533 U.S. at 690–91, 697.

In the instant case, although the IJ issued a final order of removal against Thompson, he appealed that determination to the Second Circuit and obtained a stay of removal proceedings pending the outcome of the appeal.  As a result of that stay order, Thompson's detention is authorized pursuant to INA § 236, and his continued detention in DHS custody pending the Second Circuit's ruling on his petition for review is in accordance with controlling Second Circuit law. *See Wang*, 320 F.3d at 147 ("[W]here a court issues a stay pending its review of an administrative removal order, the alien continues to be detained under § 236 until the court renders its decision."). Furthermore, as a result of the circuit court's stay of removal, the ninety-day statutory removal period described in INA § 241 has not commenced, and will not commence until the circuit court issues a final order on the pending petition for review and lifts the stay. *See id.*; *see also* INA § 241(a)(1)(B)(ii) (if removal order is judicially reviewed and court orders a stay of removal, removal order becomes final on the date of court's final order).

Alternatively, even if Thompson was currently being detained pursuant to INA § 241, as he seems to believe, he would not be entitled to habeas relief because he has not shown that there is no significant likelihood of removal in the reasonably foreseeable future.  To the contrary, the record indicates that in the event that the Second Circuit affirms the final order of removal, Thompson will be expeditiously removed to Jamaica.

Moreover, because petitioner's removal has been delayed by his own actions in pursuit of relief in the federal courts, neither his detention pending the circuit court's final

ruling, nor its duration, can be found to constitute a violation of petitioner's rights under the due process clause of the Fifth Amendment. *See Flores v. Holder*, 977 F.Supp.2d 243 (W.D.N.Y. June 7, 2013) (*citing Doherty v. Thornburgh*, 943 F.2d 204, 205 (2d Cir.1991) (petitioner cannot rely on delays resulting from litigation strategy to claim that his eight-year detention violates substantive due process) (other citations omitted).

There is likewise no merit to petitioner's contention that DHS was not authorized to detain him following the circuit court's grant of his request for a stay of removal. As discussed above, INA § 236(a) authorizes the arrest of an alien on a warrant and detention pending a decision on removability, and § 236(c) not only provides for mandatory detention of criminal aliens—such as petitioner—who have been convicted of serious and violent aggravated felony offenses, but also mandates that criminal aliens be taken into custody "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offences." 8 U.S.C. § 1226(c). Unless and until the circuit court vacates the removal order or otherwise rules in petitioner's favor on the petition for review, petitioner remains a criminal alien subject to removal and subject to lawful mandatory detention in DHS custody under the authority of the INA.

## CONCLUSION

Thompson's procedurally-based motion for summary judgment [#10] is denied.[8] As for the merits of the petition, based upon all of the foregoing, the court finds that petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in

---

[8]*See*, footnote 3, above.

good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated: Rochester, New York
       January 20, 2017        ENTER:


                            /s/ Charles J. Siragusa
                            CHARLES J. SIRAGUSA
                            United States District Judge